United States District Court
Southern District of Texas
**ENTERED**
August 07, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **FS MEDICAL SUPPLIES, LLC,** § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:25-cv-1332 |
| § | |
| **ZHEJIANG ORIENT GENE BIOTECH** § | |
| **CO., LTD. and HEALGEN SCIENTIFIC,** § | |
| **LLC,** § | |
| Defendants. § | |
| § | |

# ORDER

On July 10, 2025, the Court held a hearing in which it granted Plaintiff FS Medical Supplies, LLC's ("FSMS") Motion for Anti-Suit Injunction (DOC. 39). *See* Minute Entry dated 07/10/2025. Pursuant to Federal Rule of Civil Procedure 65(d)(1)(A) the Court now writes to "state the reasons why [the anti-suit injunction] issued."

The legal standard for an anti-suit injunction in the Fifth Circuit is well-established. Such an injunction may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's jurisdiction; or (4) cause prejudice or offend equitable principles. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 n.9 (5th Cir. 1996) (citing *In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 890 (5th Cir. 1970))

## I. VEXATIOUS OR OPPRESSIVE LITIGATION

The Fifth Circuit in *Kaepa* identified three interrelated factors to determine whether foreign litigation is vexatious: (1) inequitable hardship; (2) frustration of speedy resolution; and (3) duplicative claims. 76 F.3d at 627.

**A. Inequitable Hardship**

The record demonstrates that requiring Plaintiff to litigate in China would impose substantial burdens. Chinese evidentiary rules demand apostilled FDA registration certificates that U.S. authorities do not issue (DOC. 39-1, Yalowitz Decl. ¶ 24; DOC. 39-1 Ex. J), creating an evidentiary Catch-22 for Plaintiff regarding Defendants' central FDA compliance allegations. Additionally, Plaintiff's expert evidence suggests Chinese courts apply foreign law in less than 0.02% of cases, with U.S. law specifically in only 3 of 16,000 studied cases (DOC. 39-1, Clarke Decl. ¶ 10)—suggesting that the Chinese legal system does not have a well-established approach to applying U.S. law. This is particularly concerning here, given the parties' contractual selection of Texas law.

While Defendants correctly note that Plaintiff's principals have some experience with Chinese business practices, the Court recognizes that litigating complex contractual issues in a foreign legal system may nevertheless impose significant burdens. DOC. 43-1, Chen Decl. ¶ 3. Chinese courts impose unique procedural hurdles—including strict authentication requirements for foreign evidence (DOC. 39-1, Clarke Decl. ¶ 23), divergent discovery mechanisms (DOC. 45-1, Second Clarke Decl. ¶ 8), and unfamiliar pleading standards (DOC. 45-1, Wu Decl. ¶ 12)—that transcend general commercial knowledge. Moreover, linguistic and conceptual barriers to proper Texas law interpretation persist, given Chinese courts' limited access to English legal authorities (DOC. 39-1, Clarke Decl. ¶ 18) and lack of training in common law principles (Id. ¶ 15).

As the Fifth Circuit has held, the relevant inquiry focuses on the nature of the foreign litigation rather than the parties' resources. *Ganpat v. E. Pac. Shipping PTE Ltd.*, 66 F.4th 578, 585 (5th Cir. 2023) ("our precedents do not ask whether the party seeking the injunction is a foreigner. . .[r]ather, our precedents weigh the vexatiousness of the foreign litigation against

considerations of comity"). Here, the nature of the litigation indicates that litigating a heavily U.S.-based case in China would impose inequitable hardship on the Plaintiffs.

### B. Frustration of Speedy Resolution

The Chinese action, filed just three days after this case (DOC. 39 at 1), creates substantial risk of a race to judgment. This sequencing mirrors the circumstances in *Kaepa*, where the Fifth Circuit cautioned against tactical litigation maneuvers that position "a putative plaintiff in [a foreign forum] asserting the very claims brought against it" in domestic proceedings. 76 F.3d at 627-28. Such parallel adjudication of substantively identical claims not only risks unnecessary delay and prejudice to both parties, but also imposes undue burdens on the judicial systems involved. Most concerning is the near-certainty of conflicting rulings on contractual validity—a scenario that would inevitably produce post-judgment complications regarding issue preclusion and inconsistent interpretations of Texas law, thereby frustrating rather than advancing the efficient resolution of this dispute.

### C. Duplicative Nature of Claims

While Defendants characterize their Chinese action as a regulatory challenge (Doc. 43 at 14-15), the complaint expressly seeks to invalidate the Agreement under Texas law and the UCC. Doc. 39-1 at 117. Indeed, both proceedings substantially involve interpretation of the September 2020 Framework Purchase Agreement. While styled differently, the Chinese action's request for a declaration that the Agreement is "null and void" (Doc. 39-1 at 116) would necessarily determine many of the same contractual validity issues presented here.

This creates direct overlap with Plaintiff's breach of contract claims, as both actions require determining the Agreement's validity. The Fifth Circuit has found such mirror-image claims particularly appropriate for anti-suit relief. *See Kaepa*, 76 F.3d at 627; *Bethell v. Peace*, 441 F.2d

495, 498 (5th Cir. 1971). In line with this precedent the Court finds that anti-suit relief is appropriate in the instant case as well in order to prevent conflicting rulings on substantially similar issues.

## II. THREAT TO FORUM'S POLICIES

*Kaepa* recognizes anti-suit injunctions may issue when necessary to protect important forum policies. 76 F.3d at 627 n.9. Here, two Texas policies are implicated.

First, Texas strongly favors enforcing contractual choice-of-law provisions. *Rouse v. Tex. Capital Bank, N.A.,* 394 S.W.3d 1, 8 (Tex. App.—Dallas 2011, no pet.. Permitting a Chinese tribunal to interpret Texas contract law—contrary to both the parties' express agreement and with minimal likelihood of proper application—would fundamentally undermine this foundational Texas policy. (DOC. 39-1, Clarke Decl. ¶ 10).

Second, Texas courts discourage forum shopping. *In re Encompass Servs. Corp.*, 337 B.R. 864, 876 (Bankr. S.D. Tex. 2006). Defendants' rapid filing in China after this action began, while initially concealing the Chinese case from this Court (DOC. 39-1, Yalowitz Decl. ¶ 16), suggests tactical forum selection rather than legitimate jurisdictional interests.

## III. INTERNATIONAL COMITY

While comity is an important consideration, the Fifth Circuit has held such concerns are "at a minimum" in private commercial disputes. *Ganpat*, 66 F.4th at 583. No sovereign interests are implicated here, and the injunction would merely preserve this Court's ability to adjudicate the Texas law claims the parties agreed would govern their relationship.

While Defendant cites a number of instances where comity weighed more heavily, this is not a case where comity is warranted greater deference. For example, the *MacDermid Offshore Solutions* case is readily distinguishable from the present dispute. In *MacDermid*, the court denied

an anti-suit injunction in part because the foreign litigation was "not a reactive measure" but instead concerned a dispute "local to England," where the "focal point of th[e] litigation [was] the truth or falsity of the tests conducted in England." *MacDermid Offshore Sols. v. Niche Prods., LLC*, No. 4:12-CV-2483, 2013 U.S. Dist. LEXIS 110054, at *22–23, n.4 (S.D. Tex. Aug. 2, 2013). The court emphasized that the allegedly fraudulent testing was performed in the UK by a UK company, involved a product "manufactured and marketed specifically for the European Union marketplace," and thus "the origins of th[e] dispute lie in England." *Id.* at *19–20. By contrast, the Chinese litigation here does not center on a localized foreign controversy but instead seeks to invalidate an agreement governed by Texas law—a matter squarely within this Court's authority and the parties' contractual bargain. These distinctions render *MacDermid* inapposite.

## IV.. Conclusion

After weighing all relevant factors under *Kaepa* and its progeny, the Court concludes the anti-suit injunction is warranted to prevent duplicative litigation, protect the parties' contractual choice of law, and promote judicial efficiency.

**IT IS SO ORDERED**.

SIGNED in Houston, Texas on this the 6th of August, 2025.

Keith P. Ellison
United States District Judge