# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| FS MEDICAL SUPPLIES, LLC<br><br>　　　Plaintiff,<br><br>　v.<br><br>ZHEJIANG ORIENT GENE BIOTECH<br>CO., LTD. and HEALGEN SCIENTIFIC,<br>LLC<br><br>　　　Defendants. | Case No. No. 4:25-cv-01332<br><br>Judge Charles R. Eskridge III |

## DEFENDANTS' RENEWED MOTION TO STAY

**Table of Contents**

INTRODUCTION ............................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2

      A.      Orient Gene Test Kits Are Sold to UK Government............................................ 2

      B.      FSMS Sues Tanner. ............................................................................................. 3

      C.      FSMS Sues Defendants for the Same Damages It Seeks from Tanner. ................... 4

ISSUE TO BE DECIDED........................................................................................... 5

LEGAL STANDARD ................................................................................................ 5

SUMMARY OF THE ARGUMENT ......................................................................... 6

ARGUMENT ............................................................................................................. 7

I.      THIS CASE SHOULD NOT BE TRIED UNTIL FSMS'S MULTIPLE,
      EARLIER-FILED ACTIONS AGAINST TANNER ARE RESOLVED. ......................... 7

II.     A STAY WOULD NOT PREJUDICE FSMS. ................................................. 12

CONCLUSION........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*,
463 F. Supp. 3d 785 (S.D. Tex. 2020) ............................................................ 13

*Cal. Dep't of Toxic Substances Control v. NL Indus.*,
2021 WL 5933140 (C.D. Cal. Oct. 13, 2021) ................................................. 11

*Dresser v. Ohio Hempery, Inc.*,
2000 WL 235242 (E.D. La. Feb. 28, 2000) .................................................... 10

*E. Cornell Malone Corp. v. Continental Cas. Co.*,
2015 WL 222334 (E.D. La. Jan. 14, 2015) ..................................................... 13

*Padao v. Am. Express Nat'l Bank*,
2023 WL 8603005 (E.D.N.C. Dec. 12, 2023) ................................................. 12

*Plastipak Packaging, Inc. v. CG Roxane, LLC*,
2022 WL 3219806 (S.D. Tex. July 21, 2022) .................................................... 6

*Postel Indus., Inc. v. Abrams Grp. Const., LLC*,
2013 WL 1881560 (M.D Fla. Mar. 29, 2013) ................................................. 10

*Spacehab, Inc. v. United States*,
2006 WL 8451508 (S.D. Tex. June 30, 2006) ................................................. 10

*ZeniMax Media Inc. v. Samsung Electronics Co.*,
2017 WL 4805524 (N.D. Tex. Oct. 25, 2017) ........................................... 12, 13

**INTRODUCTION**

Plaintiff FS Medical Supplies, LLC ("FSMS") seeks a massive damages award based on alleged lost profits that do not arise from any conduct by Defendants, but instead turn on a separate dispute between FSMS and a third party, Tanner Pharma Group ("Tanner").  The lynchpin of FSMS's theory is its assertion that Tanner misinterpreted and underperformed its obligations under a profit-sharing agreement between FSMS and Tanner.  That assertion is the subject of multiple pending lawsuits that FSMS has brought against Tanner in state and federal courts in North Carolina.

Rather than litigate the underlying issue to conclusion against Tanner, FSMS has sought to shift its dispute with Tanner onto Defendants, requiring Defendants to litigate the alleged consequences of Tanner's unilateral interpretation of a contract to which Defendants are not parties.  As Defendants have showed, Defendants are entitled to summary judgment because this gambit provides no evidence of damages to FSMS caused by Defendants.  *See* ECF 125 at 13-18.  But even in the absence of summary judgment, proceeding in the current posture would be unfair, prejudicial, and inefficient, resulting in a trial that is likely to be unnecessary.

The Court recognized these concerns at the February 27, 2026 hearing on Defendants' prior motion to stay and stated that it would revisit them before setting a trial date in this case.  Those concerns are more acute now than they were in February: discovery is complete, summary judgment motions have been briefed, docket call is in less than two months, and in the meantime FSMS has added yet another case against Tanner, this time in state court, to its bevy of proceedings.

Under these circumstances, the Court should exercise its discretion to stay this case, thereby preventing prejudice, promoting fairness, and conserving judicial resources.

## NATURE AND STAGE OF THE PROCEEDINGS

FSMS brings a single claim for breach of contract. ECF 1-1 ¶¶ 52-61. Discovery is complete. ECF 75. On April 6, 2026, Defendants moved for summary judgment and FSMS moved for partial summary judgment. ECF 125, 131. Briefing on those motions concluded on May 7, 2026. Although the Court denied Defendants' prior Motion to Stay pending FSMS's related litigation against Tanner, it did so without prejudice and stated that it would address the issue again before scheduling a trial in this case. ECF 107. Docket call is set for July 21, 2026. ECF 92.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Orient Gene Test Kits Are Sold to UK Government.

This dispute stems from transactions in which Defendants sold COVID-19 antigen test kits to Tanner to be distributed to the United Kingdom Government. Tanner, a pharmaceutical distributor with connections in the UK, identified an opportunity to sell the test kits to the UK Department of Health and Social Care ("DHSC"). FSMS introduced Tanner to Defendants as "our UK partner" and "our partner for UK AG project," and put the two companies directly in touch with each other to facilitate the transactions, EX01 -412; EX02 -773, which ultimately resulted in sales of millions of kits. FSMS alleges that Defendants thereafter circumvented FSMS, in breach of obligations in two Framework Purchase Agreements ("FPAs") between FSMS and

2

Defendants, by failing to include FSMS in certain (largely unspecified) communications between Defendants and Tanner. ECF 1-1 (Complaint) ¶¶ 22-26, 40.

Separate and apart from the FPAs, in a Distribution Agreement executed by Tanner and FSMS on September 11, 2020, Tanner agreed to pay FSMS "half of the Gross Profit collected from the sale of" the test kits to the UK Government. EX03 at -4619, § 9. Pursuant to this agreement, Tanner paid FSMS approximately $6.5 million. EX04 ¶ 17. Neither Defendant is a party to the FSMS-Tanner Agreement. EX03.

### B.      FSMS Sues Tanner.

Unbeknownst to Defendants, in October 2020, Tanner informed FSMS that it did not believe it had to share 50% of all of its profits with FSMS under the FSMS-Tanner Agreement. EX05 at 107:22-111:2. Rather, Tanner informed FSMS that it interpreted its agreement to permit the calculation of the profits to be shared as if Tanner had paid Orient Gene a fixed $5 price for each test kit, even if the actual prices were lower than $5. *Id*.; EX06. As a result, instead of paying FSMS 50% of all profits Tanner earned from its sales to the UK Government, Tanner informed FSMS that it would pay only 50% of the amount by which the prices paid by the UK Government exceeded $5. *Id*. Moreover, to the extent the UK Government paid less than $5 per test, Tanner would consider the transaction a loss for purposes of its profit-sharing calculations and would not pay FSMS anything. EX05 at 112:22-113:21.

On March 24, 2021, FSMS filed suit against Tanner in California state court. EX07. FSMS alleged that Tanner owed additional profit-sharing payments to FSMS because, in FSMS's view, the payments should have been calculated on the basis of the

3

actual prices that Tanner paid to Orient Gene, rather than a fixed $5 price per test.  *Id*. ¶ 27; *see also* EX08 ¶ 27.  In FSMS's original and subsequent lawsuits against Tanner, FSMS did not allege any wrongdoing by Orient Gene or Healgen, nor that Defendants caused or contributed to Tanner's alleged breaches or underpayments to FSMS.

FSMS's lawsuit against Tanner turned into three lawsuits in the U.S. District Court for the Western District of North Carolina.  Two have been dismissed and are on appeal before the Fourth Circuit, and in the third a magistrate judge has recommended dismissal. EX09; EX10; EX11.  These developments adverse to FSMS all resulted from FSMS's revelation on February 10, 2025 that its citizenship allegations in support of diversity jurisdiction were inaccurate and that, at the time it sued Tanner, it was a citizen of China and not just states within the United States.  EX09 at 3; EX10 at 2-3; EX11.

Two months ago, on March 31, 2026, FSMS filed a fourth lawsuit against Tanner, this time in North Carolina state court.  EX12.  On May 1, 2026, Tanner moved to dismiss, and the motion is set to be heard on June 22, 2026.  EX13; EX14.

### C.   FSMS Sues Defendants for the Same Damages It Seeks from Tanner.

FSMS filed this lawsuit on March 21, 2025, less than a month after admitting that its allegations of diversity jurisdiction against Tanner were false.  ECF 1-1.

On December 18, 2025, FSMS served an expert report disclosing calculations of the "expectation damages" it seeks from Defendants.  EX04 at ¶¶ 7-8.  Those damages have two components.  The first is the exact same damages that FSMS seeks from Tanner on the grounds that Tanner, according to FSMS, should have made greater profit-sharing payments to FSMS under the FSMS-Tanner Distribution Agreement (the "Tanner

Interpretive Damages"). *Id.* ¶ 7; EX15 at 21:13-20. The second component is additional profit-sharing payments that FSMS asserts it would have received from Tanner had FSMS been more involved in price negotiations with Orient Gene, which FSMS asserts would have resulted in lower prices from Orient Gene and therefore more profit for Tanner and FSMS to share (the "Pricing Damages"). EX04 ¶ 8. FSMS also seeks these same Pricing Damages from Tanner. EX15 at 21:13-20. FSMS's expert is the same in both cases, and he has submitted nearly identical reports, in both instances focusing overwhelmingly on Tanner's documents and Tanner's financials, not those of Defendants. EX16 ¶¶ 18-28; EX04 ¶¶ 18-28.

On February 27, 2026, the Court heard argument on Defendants' prior motion to stay. Although the Court correctly recognized that this case is a "backup to the backup" of FSMS's claims against Tanner, the Court declined to stay the case at the time because Defendants did not object to completing discovery and briefing motions for summary judgment. Feb. 27, 2026 Hr'g Tr. at 38:12-24, 44:7-23. The Court stated that it would consider a stay again before setting the case for trial. *Id.* at 47:3-5.

**ISSUE TO BE DECIDED**

Whether to stay this case pending resolution of FSMS's claims against Tanner.

**LEGAL STANDARD**

"Courts have inherent power to stay the proceedings before them. This power stems from the court's authority to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants and involves the exercise of judgment, which must weigh competing interests and maintain an even

5

balance. Courts in the Fifth Circuit generally consider three factors when determining whether to issue a stay: (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation. The decision on whether to stay the proceedings is left to the broad discretion of the trial court." *Plastipak Packaging, Inc. v. CG Roxane, LLC*, 2022 WL 3219806, at *2 (S.D. Tex. July 21, 2022), *rep. & rec. adopted*, 2022 WL 3212932 (S.D. Tex. Aug. 9, 2022) (cleaned up).

## SUMMARY OF THE ARGUMENT

A trial in this case prior to the resolution of FSMS's claims against Tanner would be highly prejudicial to Defendants, as well as highly inefficient. FSMS effectively seeks to force Defendants to stand in the shoes of Tanner to defend Tanner's interpretation of its Distribution Agreement with FSMS. Requiring the parties and the Court to adjudicate the nuances of a third-party contract while that third party's liability is being adjudicated in earlier-filed litigation is unfair to Defendants and procedurally inefficient. To avoid such an unfair, illogical, and wasteful outcome, the Court should exercise its broad discretion to stay this matter temporarily until the foundational issues in the Tanner litigation are resolved. *See Plastipak*, 2022 WL 3219806, at *2-3 (exercising trial court's "broad discretion" and granting stay because "proceeding at this juncture would require the Court to perform a potentially unnecessary analysis").

6

**ARGUMENT**

**I.     THIS CASE SHOULD NOT BE TRIED UNTIL FSMS'S MULTIPLE, EARLIER-FILED ACTIONS AGAINST TANNER ARE RESOLVED.**

It would be both highly prejudicial to Defendants and inefficient for the Court and the parties if the parties were to try this case before the resolution of FSMS's claims against Tanner for the same actual damages that FSMS seeks from Defendants.  Those damages are the same across both sets of litigation, all arising from Tanner's interpretation of its profit-sharing obligations to FSMS.

An illustration helps demonstrate how FSMS's actual damage claims necessarily turn on Tanner's interpretation (with which Defendants had no involvement) of the Tanner-FSMS Distribution Agreement (to which Defendants are not parties).

Consider first a transaction in which Tanner buys tests from Orient Gene for $4 per test and sells them to the UK Government for $6 per test.  It would appear there would be $2 in profit to be split between Tanner and FSMS, with each receiving $1. Under Tanner's interpretation of the Tanner-FSMS Agreement, however, Tanner uses a fixed purchase price of $5 (rather than the actual purchase price of $4) to calculate the profit to be shared with FSMS, resulting in only $1 of total profit and a payment to FSMS of only 50 cents.  FSMS seeks the additional 50 cents from Tanner, as well as from Defendants in this case, even though it is undisputed that Defendants had nothing to do with Tanner's decision to pay FSMS 50 cents instead of $1.

Now consider a transaction in which the UK Government pays Tanner only $4.50 per test.  Although it would appear there would be 50 cents of profit for Tanner and

FSMS to split, with each receiving 25 cents, Tanner's use of a fixed $5 purchase price for purposes of its profit-sharing calculations means Tanner considers the transaction a loss for these purposes and makes no payment to FSMS. As in the scenario above, FSMS seeks the 25 cents from Tanner, as well as from Defendants, even though Defendants had nothing to do with Tanner's decision not to pay FSMS those 25 cents.

As relevant to Defendants, the two scenarios above describe and illustrate the flaws in FSMS's claim *against Defendants* for the "Tanner Interpretive Damages."

FSMS's claim for "Pricing Damages" suffers from the same problems. In that claim, FSMS asserts that if Defendants had not circumvented FSMS, FSMS could have negotiated lower prices from Orient Gene, resulting in greater profits to be split with Tanner. *Id.* But just like the Tanner Interpretive Damages, the Pricing Damages turn entirely on Tanner's interpretation of its profit-sharing obligations to FSMS.

This dependency can be seen by considering what would happen in the scenarios described above if Tanner paid Orient Gene $3 per test instead of $4 per test. Although it would appear there would be more profit to be split between Tanner and FSMS, under Tanner's interpretation of its agreement with FSMS, this lower purchase price would make no difference. Tanner would continue to use a fixed $5 purchase price for purposes of its profit-sharing calculations; in the first scenario, it would continue to pay FSMS 50 cents, and in the second scenario, it would continue to pay FSMS nothing at all. In all events, without a change in (or a ruling rejecting) Tanner's interpretation of its profit-sharing obligations, FSMS would not receive a single cent more.

8

Defendants' summary judgment papers show that FSMS is not entitled to actual damages from Defendants because the alleged shortfalls were not caused by Defendants' alleged circumvention, but rather, by Tanner's independent and unilateral interpretation of its profit-sharing obligations to FSMS. *See* ECF 125 at 13-16; ECF 160 at 6-10. As Defendants have shown, there is no evidence that any degree of increased communications with or involvement by FSMS would have changed how Tanner interpreted those obligations. *See id*; EX17 at 166:23-167:7. Nor is there any evidence that Orient Gene had any role in Tanner's interpretation of its obligations. EX05 at 108:5-8 ("Q. Did Orient Gene play any role in developing the position that Tanner took on its interpretation of its agreement with FS? A. No."); EX18 at 195:24-196:9 ("Q…. . Do you have any evidence to suggest that Orient Gene had any role in Tanner's development of the profit share, contractual interpretation, that you're litigating with Tanner about? A. I do not."); EX15 at 24:10-14 (similar).

But separate and apart from Defendants' entitlement to summary judgment on this basis, the illustrations above confirm that all of FSMS's claims for actual damages against Defendants are derivative of claims FSMS has been pursuing against Tanner since 2021, through what are now four different lawsuits in state and federal courts in North Carolina. EX07-12. In all of those cases, as in this one, FSMS's damages claims turn on Tanner's interpretation of its profit-sharing agreement with FSMS, to which neither Defendant is a party. EX15 at 21:13-20; EX12 ¶ 10.

It would be profoundly unfair and prejudicial to Defendants—as well as wasteful and inefficient for the parties and the Court—for FSMS's claims against Defendants to be

tried before FSMS's earlier-filed claims against Tanner, which is solely responsible for the contested interpretation.

The prejudice and inefficiency results in part from the fact that if a court in North Carolina concludes that Tanner's interpretation of its profit-sharing obligations to FSMS is correct, FSMS will have no actual damages against Defendants. *See, e.g., Postel Indus., Inc. v. Abrams Grp. Const., LLC*, 2013 WL 1881560, at *6 (M.D Fla. Mar. 29, 2013) (staying case in light of parallel proceeding against non-party where "[i]f the [other proceeding] results in a finding that [plaintiff] did not breach its subcontract . . . [plaintiff] will not incur the damages it has claimed—against both [the non-party] in the [other proceeding] and against [defendants] in this litigation"), *rep. & rec. adopted*, 2013 WL 1881556 (M.D. Fla. May 3, 2013); *Spacehab, Inc. v. United States*, 2006 WL 8451508, at *2 (S.D. Tex. June 30, 2006) (staying case where resolution of other proceeding could render "all issues before this Court . . . moot" and "simultaneous proceedings may result in unnecessary expense and duplicative litigation"); *Dresser v. Ohio Hempery, Inc.*, 2000 WL 235242, at *9 (E.D. La. Feb. 28, 2000) (staying case because outcome in other proceeding could make plaintiff "not be able to pursue his theory of damages" in present case).

But that is only part of the problem. If the North Carolina proceedings result in a determination that Tanner's interpretation of its profit-sharing obligations to FSMS is incorrect, FSMS likewise would have no claims for actual damages against Defendants. Instead, FSMS would be entitled to the amounts that it seeks from Tanner. *See supra* at 8-9. FSMS's argument that it may not be able to collect a judgment against Tanner, *see*

Feb. 27, 2026 Hr'g Tr. at 26:4-18, is purely speculative and no basis to engage in wasteful proceedings. *See Cal. Dep't of Toxic Substances Control v. NL Indus.*, 2021 WL 5933140, at *10 (C.D. Cal. Oct. 13, 2021) ("conclusory allegations about a potential difficulty in collecting a judgment" insufficient to show injustice against plaintiffs). FSMS's concern also does not change the analysis because there is no evidence that a stay here would have any impact on FSMS's ability to collect a judgment against Tanner.

The most FSMS can say is that it is unclear whether or when its claims against Tanner will be tried, but to the extent that is so, FSMS created that uncertainty—and it certainly is not a result of anything Defendants have done. FSMS's claims against Tanner were on the verge of summary judgment in early 2025 (before FSMS sued Defendants) when FSMS admitted that its allegations of its own citizenship for purposes of diversity jurisdiction were false. EX09 at 3. FSMS's failure to correctly identify its own citizenship was neither Tanner's fault nor Defendants'—it was FSMS's fault alone. *See* Feb. 27, 2026 Hr'g Tr. at 34:22-35:1 (FSMS counsel admitting "I discovered there was a diversity issue. Shame on me for not finding it earlier, but nobody found it."); EX09 at 3 (North Carolina federal court noting that posture of FSMS's first federal suit against Tanner was "largely the result of the Plaintiff's own making"); EX10 at 2 (same). FSMS should not be permitted to benefit in the present action from the fallout from the false allegations it asserted in its cases against Tanner.

In any event, FSMS's claims against Tanner are live in multiple forms. FSMS is currently pursuing those claims in federal district court in North Carolina, the Fourth Circuit, and state court in North Carolina. FSMS has implied to this Court that its claims

against Tanner may never reach trial, *see* Feb. 27, 2026 Hr'g Tr. at 36:22-37:2, but that is not what it has said in the cases against Tanner.  To the contrary, in FSMS's opposition to Tanner's motion to dismiss the state court lawsuit, FSMS argued that it should be permitted to move forward with that action and that the statute of limitations presents no bar to the action.  *See* EX19 at 13-28.

## II.    A STAY WOULD NOT PREJUDICE FSMS.

In contrast to the prejudice and inefficiency that would result from a trial of this action before resolution of FSMS's claims against Tanner, a stay here would not prejudice FSMS for two principal reasons.

*First*, FSMS chose to delay bringing this case for nearly five years.  FSMS alleges that Defendants breached their agreements with FSMS in September 2020, but FSMS did not send Defendants a demand letter until May 2023 and did not file this action until March 2025.  FSMS's conduct undermines any objection to staying this case until its earlier-filed claims against Tanner are resolved.  *See ZeniMax Media Inc. v. Samsung Electronics Co.*, 2017 WL 4805524, at *5 (N.D. Tex. Oct. 25, 2017) (no undue prejudice from stay because plaintiff "ha[d] already delayed any relief by waiting so long to sue").

*Second*, FSMS seeks only monetary relief in a case where all discovery has been completed.  Mere delay of a potential monetary recovery is not sufficient prejudice to deny a stay.  *See id.* (no prejudice where there was "no reason why an award of damages would not adequately compensate [plaintiff] for any losses it ultimately proves in its case"); *Padao v. Am. Express Nat'l Bank*, 2023 WL 8603005, at *1 (E.D.N.C. Dec. 12,

12

2023) ("The harms plaintiffs have identified in opposing a stay are, at bottom, monetary, and any delay in monetary recovery is an insufficient basis to deny a stay." (cleaned up)).

Moreover, FSMS is not the kind of plaintiff as to which speedy compensation could be a concern. FSMS long ago ceased all operations other than the pursuit of lawsuits against Tanner and Defendants. EX18 at 16:6-9. FSMS is composed of only two principals, both of whom are successful and sophisticated businessmen; Mr. Cagan, for example, maintains membership in a private association that required members to have a net worth of at least $20 million. *See* EX18 at 22:6-23:25. They were comfortable enough with their financial situation to put off filing this suit for years. FSMS will suffer no cognizable prejudice if its claims against Tanner are permitted to reach a final resolution before a trial takes place in this case.

To the extent FSMS asserts that it would be prejudiced by a stay of supposedly indefinite duration, any such prejudice does not outweigh the benefits to fairness and efficiency that would result from a stay. Indeed, stays pending the resolution of other proceedings of uncertain duration are common. *See, e.g.*, *5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*, 463 F. Supp. 3d 785, 795 (S.D. Tex. 2020) (staying case "during the pendency of any arbitral and confirmation proceedings," which had not begun); *ZeniMax Media Inc.*, 2017 WL 4805524, at *4 (staying case until other trial and appellate proceedings were concluded); *E. Cornell Malone Corp. v. Continental Cas. Co.*, 2015 WL 222334, at *2-3 (E.D. La. Jan. 14, 2015) (staying case until other "court case is resolved").

13

In any event, any concern about the duration of a stay here easily can be addressed by staying the setting of a trial for a fixed period of time, such as 3-6 months, and directing the parties to report on the status of FSMS's four lawsuits against Tanner at the close of that period.  The mere fact that it is uncertain when those cases will be resolved does not negate the appropriateness of a stay.

## CONCLUSION

For the reasons set forth above, the Court should stay trial in this case until FSMS's claims against Tanner are resolved.


Dated:  June 5, 2026                          Respectfully submitted,

                                              */s/ Joseph M. Graham, Jr.*

                                              Joseph M. Graham, Jr.
                                              State Bar No. 24044814
                                              SDTX ID: 634151
                                              Geraldine W. Young
                                              State Bar No. 24084134
                                              SDTX ID: 1725980
                                              Kevin Lie
                                              State Bar No. 24136085
                                              SDTX ID: 3891801
                                              NORTON ROSE FULBRIGHT US LLP
                                              1550 Lamar Street, Suite 2000
                                              Houston, TX 77010
                                              Tel: (713) 651 8214
                                              Fax: (713) 651 5246
                                              joseph.graham@nortonrosefulbright.com
                                              geraldine.young@nortonrosefulbright.com
                                              kevin.lie@nortonrosefulbright.com

                                              Benjamin J. Razi (admitted *pro hac vice*)
                                              Michael M. Maya (admitted *pro hac vice*)
                                              Maura Sokol (admitted *pro hac vice*)

14

COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., NW
Washington, DC 20001
(202) 662-6000
brazi@cov.com
mmaya@cov.com
msokol@cov.com

Ruixue Ran
(admitted *pro hac vice*)
Sheng Huang
(admitted *pro hac vice*)
COVINGTON & BURLING LLP
2301 Tower C Yintai Centre
2 Jianguomenwai Avenue
Chaoyang Dist., Beijing 100022
+86 10-5910-0591
rran@cov.com
shuang@cov.com

*Counsel for Defendants*

15

## CERTIFICATE OF WORD COUNT

I hereby certify that this motion contains 3,722 words, excluding the case caption, tables, signature block, and certificates.

*/s/ Maura Sokol*
Maura Sokol

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendants conferred with counsel for Plaintiff about this motion on a video conference on June 2, 2026.  Plaintiff opposes the motion.

*/s/ Maura Sokol*
Maura Sokol

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, a copy of the foregoing document was served upon counsel of record registered with the Court's ECF system.

*/s/ Geraldine Young*
Geraldine Young

16